In the Matter of Proving the Will of GEORGE W. HORTON, Deceased.

ALICE M. HORTON, Appellant; JANE A. DICKIE, Respondent.

Will — probate of will in foreign state — if such state does not require notice to parties interested such probate is binding upon such parties residing in this state.

1. A proceeding to probate a will does not require service of process upon all parties interested, even though non-residents, but is in the nature of a proceeding *in rem* where such service may be dispensed with by statute.

2. If a Probate Court of another state otherwise has jurisdiction it may make a decree admitting a will to probate which is binding upon non-residents, even though notice has, by statute, been dispensed with on the original probate, and such probate becomes conclusive in the absence of contest within such period as is provided by the laws of that state. It is error when a will is offered for probate in this state under such circumstances to reject evidence of such probate proceedings. (Code Civ. Pro. § 2629.)

*Matter of Horton,* 169 App. Div. 292, reversed.

(Submitted January 6, 1916; decided March 7, 1916.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered July 30, 1915, which affirmed a decree of the Westchester County Surrogate's Court, admitting to probate the will of George W. Horton, deceased.

The facts, so far as material, are stated in the opinion.

*William H. Sommer* for appellant. The exclusion by the surrogate of the exemplified copy of the paper writing on file in the office of the clerk of the Surrogate's Court of Lake county, in the state of Ohio, and of the record of the proceedings of said court had thereon, and

of the letters testamentary issued out of said court to the contestant herein, was error, by which the contestant was necessarily prejudiced. (*Burnham* v. *Pidcock*, 58 App. Div. 273; *Van Deventer* v. *Mortimer*, 56 Misc. Rep. 650; Wigmore on Evidence, § 1680; *Matter of Rubins*, 128 App. Div. 626; 195 N. Y. 527; *Matter of Anderson*, 78 Misc. Rep. 713; *Matter of Will of Merriam*, 136 N. Y. 58; *Garvey* v. *U. S. F. & G. Co.*, 77 App. Div. 391; *Simmons* v. *Saul*, 138 U. S. 439; *Matter of Law*, 56 App. Div. 454; *Matter of Gaines*, 84 Hun, 520; *Matter of Barnes*, 70 App. Div. 527; *Matter of Nash*, 37 Misc. Rep. 709; *Matter of Williams*, 34 Misc. Rep. 749.) Since the Ohio statute relative to the probate of wills does not require notice to non-resident heirs or next of kin, the failure to give such notice in no wise affected the competency of the evidence excluded. (*People* v. *Wayne*, 39 Mich. 198; *Crippen* v. *Dexter*, 79 Mass. 330; *Carpenter* v. *Denoon*, 29 Ohio St. 379; *Matter of Crawford*, 21 Ohio C. C. 544; *Bonnemort* v. *Bill*, 167 Mass. 339; *Shoyer* v. *Richmond*, 16 Ohio, 455; *Dickey* v. *Vann*, 81 Ala. 425.) It was the duty of the surrogate to give full faith and credit to the judgment of the Probate Court of Lake county, Ohio. (U. S. Const. art. 4, § 1; U. S. R. S. § 905; *Mills* v. *Duryee*, 11 U. S. [7 Cranch] 481; *Buckner* v. *Finley*, 27 U. S. [2 Pet.] 586; *M'Elmoyle* v. *Cohen*, 38 U. S. [13 Pet.] 312; *Mitchell* v. *Lenox*, 39 U. S. [14 Pet.] 49; *Bank* v. *Dalton*, 50 U. S. [9 How.] 522; *Booth* v. *Clark*, 58 U. S. [17 How.] 322; *Hoyt* v. *Sheldon*, 66 U. S. [1 Black] 518; *Christmass* v. *Russell*, 72 U. S. [5 Wall.] 475; *Green* v. *Van Buskirk*, 72 U. S. [5 Wall.] 307; *Cheever* v. *Wilson*, 76 U. S. [9 Wall.] 108; *Crapo* v. *Kelly*, 83 U. S. [16 Wall.] 610; *Dupasseur* v. *Rochereau*, 88 U. S. [21 Wall.] 130; *Turnbull* v. *Payson*, 95 U. S. [17 Otto] 418; *Wisconsin* v. *Insurance Co.*, 127 U. S. 265; *Cole* v. *Cunningham*, 133 U. S. 107.) The production, under the stipulation, of an exemplified copy of the Ohio will and of a judgment and proceedings of

the Probate Court of Lake county, in the state of Ohio, of which county the decedent was a resident and in which he was domiciled at the time of his death, declaring the same to be his last will and testament and admitting it to probate, established the factum of the Ohio will. (*Shipman* v. *Treadwell*, 208 N. Y. 410; *Guggenheim* v. *Wahl*, 203 N. Y. 390; *Rupp* v. *Tupp*, 156 App. Div. 391; *Crippen* v. *Dester*, 79 Mass. 330; *Lazier* v. *Westcott*, 26 N. Y. 146.)

*Henry G. K. Heath* for respondent. The records of the Probate Court of Lake county, Ohio, were properly excluded. (*Matter of Hathaway*, 4 Ohio St. 383; *Matter of Jones*, 2 Ohio N. P. 194; *Barr* v. *Chesterman*, 2 Ohio C. C. 441; *Wadsworth* v. *Purdy*, 12 Ohio C. C. 8; *Davis* v. *Davis*, 11 Ohio St. 455; *Matter of Kimball*, 155 N. Y. 62; *Olmstead* v. *Olmstead*, 190 N. Y. 458; *Matter of Law*, 56 App. Div. 454; *Matter of Sands*, 62 Misc. Rep. 146.) Neither the Ohio Probate Court records nor the exemplified copy of the Ohio will were competent evidence of a revocation of the New York will. (*Matter of Goldsticker*, 192 N. Y. 35; *Matter of Wear*, 131 App. Div. 875; *Matter of Williams*, 34 Misc. Rep. 748.)

HISCOCK, J. George W. Horton, the testator, died at Chardon, in the state of Ohio, on September 14, 1913. He left an instrument dated April 5, 1902, executed according to the laws of this state as a will, in which he disposed of his entire estate and appointed his daughter, Jane Ann Dickie, the executrix thereof. In this instrument he described himself as a resident of City Island in this state.

After Horton's death this instrument was offered for probate in the Surrogate's Court of Westchester county in this state, where he had left assets, by the executrix thereof as his last will and testament. Such probate was contested by the appellant, Alice M. Horton, from

whose answer and objections it appeared that she was married to the said Horton in September, 1912, and that on August 8, 1913, he executed at Painesville, Ohio, another instrument purporting to be his last will and testament whereby he revoked all former wills, gave all his estate to the contestant, and made her his sole executrix; also that on September 22, 1913, this instrument was admitted to probate as his last will and testament by the Probate Court of Lake county, Ohio.

In support of the allegations of her answer and in order to prove that the instrument of 1902 was not the last will and testament of the said testator, the contestant offered in evidence a duly authenticated copy of the instrument of 1913, and of the proceedings admitting it to probate in Ohio. These were objected to and excluded by the surrogate upon the grounds hereafter to be considered and which did not include any objections to the form of the evidence. In connection with the offer of this evidence it also appeared without dispute that under the statutes of the state of Ohio governing the admission of wills to probate and the decisions construing the same, notice of a proceeding for probate is not required to be served on any of the parties interested except such as are residents in that state; that no contest is permitted on behalf of those interested in resisting the original probate (General Code of Ohio, §§ 10507; 10516; *Matter of Hathaway.* 4 Ohio St. 383; *Matter of Jones*, 2 Ohio N. P. 194; *Barr* v. *Closterman*, 3 Ohio C. C. 441; affirmed, 27 Bull. 392); that the order admitting the will is *prima facie* evidence only of its validity (*Wadsworth* v. *Purdy*, 12 Ohio C. C. [N. S.] 8), but if within two years no one appears and contests its validity the probate will be forever binding, except as to infants and others under disability. (R. S. § 10531.) It also fully appeared that in accordance with such statutes no notice of said probate proceedings in Ohio was given to the respondent, testator's daughter, and an infant granddaughter, both of whom resided in

this state and who were his only heirs at law and next of kin.

In this condition of the proofs the surrogate rejected evidence of the probate proceedings in Ohio, including the copy of the purported will involved therein, on the apparent ground that inasmuch as no notice had been given to the next of kin of the testator in this state said proceedings were without jurisdiction and void as to them and proved nothing. The view of lack of jurisdiction, but on a somewhat different ground, has been sustained by the Appellate Division and the question of its correctness is the only one presented on this appeal.

The Probate Court of Ohio was a court of limited jurisdiction, and unless it appears that it had jurisdiction to admit said will to probate its proceedings are void as claimed, and derive no benefit from the "full faith and credit" provision of the Constitution. Assuming at this point of the discussion that the testator was such a resident of Ohio at the time of his death as to furnish the Probate Court of that state with that element of jurisdiction, the question is presented whether a proceeding to probate a will is one which requires service of process upon all parties interested, even though non-residents, or is one in the nature of a proceeding *in rem* where such service may be dispensed with.

We regard it as well established that the latter is the case and that if the Probate Court otherwise has jurisdiction it may make a decree admitting a will to probate which is binding upon non-residents even though notice has been dispensed with on the original probate, and such probate becomes conclusive in the absence of contest within a given period as provided by the laws of Ohio now before us. (*Vanderpoel* v. *Van Valkenburgh*, 6 N. Y. 190, 198; *Matter of Law*, 56 App. Div. 454, 458; *Matter of Gold-sticker*, 192 N. Y. 35, 39; *Woodruff* v. *Taylor*, 20 Vt. 65, 73; *Crippen* v. *Dexter*, 13 Gray [Mass.], 330; *Bonnemort* v. *Gill*, 167 Mass. 338, 340; *Robertson* v. *Pickrell*, 109

U. S. 608; *Overby* v. *Gordon*, 177 U. S. 214; *Tilt* v. *Kelsey*, 207 U. S. 43; *Christianson* v. *King Co.*, 239 U. S. 356.)

The law upon this general subject is well stated in *Woodruff* v. *Taylor* (20 Vermont, 65, 73), where the court, after describing the procedure necessary in order to obtain jurisdiction *in personam*, says: "A judgment *in rem* is founded on a proceeding instituted, not against the person, as such, but against or upon the thing or subject-matter itself, whose state, or condition, is to be determined. It is a proceeding to determine the state, or condition, of the thing itself; and the judgment is a solemn declaration upon the status of the thing, and it *ipso facto* renders it what it declares it to be. The probate of a will I conceive to be a familiar instance of a proceeding *in rem* in this state. The proceeding is, in form and substance, upon the will itself. No process is issued against any one; but all persons interested in determining the state, or condition, of the instrument are constructively notified, by a newspaper publication, to appear and contest the probate; and the judgment is, not that this or that person shall pay a sum of money, or do any particular act, but that the instrument is, or is not, the will of the testator. It determines the status of the subject-matter of the proceeding. The judgment is upon the thing itself; and when the proper steps required by law are taken, the judgment is conclusive, and makes the instrument, as to all the world (at least so far as the property of the testator within this state is concerned) just what the judgment declares it to be."

Again in *Crippen* v. *Dexter* (13 Gray, 330) a will probated in Connecticut was offered for probate in Massachusetts, and a son of the testator objected to evidence of the decree allowing the Connecticut probate on the ground, among others, that he had not had notice of the Connecticut proceedings. In overruling the objection, Chief Justice SHAW said: "The judgment of a probate court,

allowing proof of a will, and admitting it to probate, is to some extent like a proceeding *in rem*, binding upon .the rights of all persons interested in the property to be administered, though they are not named as parties. * . * * As to all those facts which are necessary to the establishment of a will, in whichever form the case is entertained, and as to the regularity of the proceedings and their conformity to the law of the state or country where they are had, the judgment itself must .be held conclusive; it is required by the rule of the Constitution of the United States, which requires that the acts and judicial proceedings in one state shall be respected in the courts and tribunals of the others; and by the rule of the common law, giving effect to judgments of other states, where they have a peculiar jurisdiction in case of proceedings *in rem*, and have custody of the subject-matter. * * * In the present case, most of the objections taken by the appellant are not open to him here. The one most relied on, and which at first seemed to require serious consideration, was that no notice was given by the probate court of Connecticut of the time and place for the proof of this will. But it being found that by the law of Connecticut no formal notice is required, the legal ground of opposition is removed, because it would not invalidate the probate of the will there. If it be objected that such a law itself is unreasonable and ought not to be sanctioned elsewhere, it becomes a question whether such theoretic defect in the general law is likely, practically, to work injustice. A man dying, having property, usually dies within the knowledge of his kindred; the death itself is a fact of some notoriety in his neighborhood, and through the circle of his associates; proceedings for the settlement of his estate of necessity soon follow, and may be easily known to those most interested, so that actual knowledge of the proceedings will be had."

In *Bonnemort* v. *Gill* (167 Mass. 338, 340) it is said: " The decree of the court admitting the will to probate is

24

in the nature of a judgment *in rem*, which establishes the
will against all the world.   Any person interested may
make himself a party to the proceedings by applying to
the proper tribunal, and he is forever bound by the decree,
whether he is in fact a party or not."   (See, also, upon
this point *Johnes* v. *Jackson*, 67 Conn. 81, 90.)

In addition to the general rules of law established by
the authorities as applicable to this subject, the state of
New York has elected to give effect by statutory enact-
ment to a decree of another state admitting a will of per-
sonal property to probate.   (Code of Civ. Pro., §§ 2629
*et seq.*)

It would, therefore, appear that if the Ohio Probate
Court had jurisdiction otherwise to make its decree and
no proceeding for a contest has been instituted as pro-
vided, the will so admitted to probate is effective to
revoke the earlier New York will as a will of personal
property, even though respondents had no notice of the
probate proceedings.   It not appearing that the decedent
left any real estate in New York we do not pass on the
question whether said Ohio decree and will would effect
a revocation of the New York will as a will of real estate.

The respondents assign various reasons other than the
one of lack of service of process upon them why the Ohio
decree and the will thereby appearing to be established
are not binding and were properly excluded.   The only
one of these which it is necessary to consider is the one
adopted by the Appellate Division which in its opinion
said: " The respondent, against the appellant's assertion,
contends that the decree of the Ohio court did not bar
inquiry into the domicile of the decedent; that it was not
even competent evidence of the fact of domicile, as neither
the proponent, nor the heirs at law, nor the next of kin,
were parties to the proceeding in which the decree was
made; that the surrogate of Westchester county had the
power to decide that the decedent was a resident within
his jurisdiction; and, if he so decided, that he had juris-

diction of the probate of the decedent's will.  Sustained
by authority, we approve this contention and affirm the
decree, with costs.  (*Overby* v. *Gordon*, 177 U. S. 214;
*Tilt* v. *Kelsey*, 207 U. S. 43.) "

There is no doubt of the proposition that in order to
make a valid decree the Ohio court must have had juris-
diction to entertain the proceedings and to which jurisdic-
tion it is assumed that the domicile of the testator in Ohio
at the time of his death was an essential element.  Nor
is there any doubt of the further proposition that the
decision by the Ohio court of this jurisdictional fact in
favor of its proceedings was not conclusive upon these
respondents who were not parties thereto but could have
been contested in the Surrogate's Court in this state when
the decree was offered in evidence.  (*Tilt* v. *Kelsey*, 207
U. S. 43.)  But I think the answer to the attempt to sus-
tain the rulings and decree appealed from on this ground
is that no such question in respect of the jurisdiction of
the Ohio court was fairly raised at the hearing; that the
opposition of the respondents to the admission of the
decree was so centered upon and limited to the proposi-
tion that evidence of the decree was not admissible
because they were not parties thereto and that without
its admission there was no evidence of the execution of
the alleged later Ohio will, that it was fairly calculated
to lead the appellant into the belief and understanding
that that was the only jurisdictional obstacle which she
was required to surmount.  The Ohio will recited that
the testator was a resident of that state when it was
executed and the surrogate has found that he died there,
and in view of these facts and of the contentions which
were made by the respondents the appellant was entitled
to draw the inference that the necessary domicile of the
testator in Ohio was assumed and not a subject of
controversy.

*Tilt* v. *Kelsey*, cited by respondents, seems pertinent.
In that case the courts of New Jersey had probated a will

and distributed the estate. Subsequently thereto, the New York courts sustained an assessment of a transfer tax upon the estate, although the New Jersey proceedings were set forth and not impeached on any jurisdictional ground. This court held that the proceedings in New Jersey were of no avail to prevent the assessment of the tax. This holding was reversed by the United States Supreme Court, where it was held that the New Jersey records were conclusive, and that the decree of distribution was effective to relieve the estate of any further obligation. The Federal court held that even though the comptroller of this state who represented the state in transfer tax matters, was not notified of the New Jersey proceedings for probate and distribution, they being in the nature of proceedings *in rem*, the decrees were binding and conclusive in the absence of any attack upon jurisdictional grounds, and the court said: "When, however, full faith and credit is demanded for a judgment in the courts of other states, an inquiry into the jurisdiction is always permitted, and if it be shown that the proceedings relied upon were without the jurisdiction of the court, they need not be respected. * * * The defendant in error, acting upon this well-settled rule, might have attacked the jurisdiction of the New Jersey courts, and thus brought forward for consideration many important questions which, in the view we take of the case, need not even be stated. But there was no attempt, except in argument here, to deny the right of the New Jersey court to act upon the paper writing purporting to dispose of the estate of Tilt, and by admitting it to probate to convert it into an operative will. It is true that, as a basis of assessing transfer taxes, it was proved that Tilt was a resident of New York at the time of his death, a fact which would be relevant to the question of jurisdiction. But that fact was not proved or used for the purpose of invalidating the proceedings taken in probating the will and administering the estate." (p. 59.)

I think that error was committed in excluding the evidence and that the order appealed from should be reversed and the proceedings remitted to the Surrogate's Court for a rehearing, with costs to the appellant payable out of the estate.

WILLARD BARTLETT, Ch. J., CHASE, COLLIN, HOGAN, CARDOZO and SEABURY, JJ., concur.

Order reversed, etc.