In the Matter of the Estate of DAVID E. LAMBORN, Deceased.

Surrogate's Court, New York County, July 9, 1938.

*Charles Caldwell*, for the petitioner, Charles G. Meehan, John M. Lamborn and all brothers and sisters of decedent.

*Elmer E. Wigg*, special guardian for Catherine Ward Lamborn, an infant.

*Pressinger & Wigg*, for Artemas E. Ward, father and as guardian, etc., of Catherine Ward Lamborn, an infant, and as administrator, etc., widow.

*William Burdell Banister*, special guardian for Michael Joseph Flanagan, an infant.

*Todd Wool*, for Mary Flanagan and James Price.

*William R. Perkins* and *Charles Caldwell*, for Florence M. Lamborn, mother of decedent.

FOLEY, S. The questions presented for determination arise upon the return of an order to show cause to dismiss the proceeding for the probate of the alleged last will and testament of a non-resident decedent.

He died at Montclair, New Jersey, on October 18, 1937. It is undisputed that he was a resident of that State. It is alleged in the petition of the proponent that the decedent left tangible and intangible personal property in New York county. The propounded paper bears no date, but was apparently signed within twenty-four hours before death. Its context is almost bizarre in character. It is written on the form of a waiter's check of a road house located in New Jersey. The decedent left him surviving his widow (a minor), his mother, three brothers and two sisters. The widow is a resident of New Jersey. She is not mentioned as a beneficiary to any extent whatsoever. The mother also resides there. The principal bequest in the will is given to her. Three pecuniary legacies are given to three friends, all of whom reside in New Jersey. The proponent is one of these legatees. No other persons are granted any enforceable benefits under the instrument.

The decedent at the time of his death was twenty years of age. Under the laws of the State of his domicile, because of infancy he was incompetent to execute a will. (4 Comp. Stat. N. J. p. 5871, § 28.) If he died intestate his widow, under the law of New Jersey, would take his entire estate. (N. J. Orphans' Court Act, § 169-a.) The legatees named in the alleged will have therefore plainly resorted to this court to probate the instrument which may be valid here, but which is utterly void under the provisions of the law of the domicile. Before the initiation of this probate proceeding, intestate administration had been granted by the appropriate court in that State to the father of the infant widow, as her guardian. The question is presented whether, in the interest of justice and under all the circumstances, the pending proceeding should be entertained or dismissed.

In order to clearly define the issues involved, the facts relative to the commencement of this proceeding should be stated. When the petition for probate was originally presented to the surrogate he denied the right to the petitioner to file it because of the circumstances disclosed in the petition. Several weeks thereafter the attorney for the proponent requested leave to place the petition on file in order that the parties involved might obtain a formal adjudication of their rights to have the application entertained, with the further right of appeal from the determination. Permission to file the petition was accordingly granted subject to the condition that after service of citation was made upon the necessary parties, the

surrogate would determine the preliminary issues raised. By similar direction of the surrogate, the order for the publication of citation contained a provision in its concluding paragraph to the effect that such order was granted without prejudice to a determination by the surrogate as to whether jurisdiction of the proceeding should be entertained or denied, as a matter of law or as a matter of discretion.

The issues thus sharply defined present three questions. *One.* Do the pertinent statutes of our State impose a mandatory duty upon the surrogate to entertain jurisdiction? *Two.* Has the surrogate the right in his discretion to refuse to entertain jurisdiction? *Three.* If discretion exists, should he, under the particular circumstances of this case, accept or reject the entertainment of jurisdiction?

I hold that discretion exists and in the exercise of such discretion the proceeding must be dismissed.

The extraordinary circumstances presented here distinguish this proceeding from those cases in which the formal offer of the will of a non-resident for probate has been entertained by the Surrogates' Courts of this State.

In the solution of the questions presented resort must be had, first, to the statutes applicable to the admission to probate of the will of a non-resident, and to the authorities which have construed them, and secondly, to the custom and practice of the Surrogates' Courts and the reasons which have led to the acceptance or rejection of the entertainment of jurisdiction. Unquestionably under our statutes this court has the power and authority to entertain the probate proceeding and to admit the will to probate if the evidence shows compliance with the statutory requirements. (Dec. Est. Law, §§ 22-a, 23; Surr. Ct. Act, § 45.) Necessarily, in such cases the location of personal or real property within the county of the court where the will is offered, must be shown as the basis of jurisdiction. (Surr. Ct. Act, §§ 45, 46, 47.) The leading case which recognizes the privilege of the court to act is *Matter of Rubens* (195 N. Y. 527, affg. 128 App. Div. 626). There the testator was a resident of France and died leaving personal property within this county. The will was executed in France according to our laws, but not according to the law of France. The statute in effect at the time of the death of the testator expressly authorized the admission of the will of a non-resident, where it was executed as prescribed by the laws of this State. (Former Code Civ. Proc. § 2611, later Dec. Est. Law, § 23.)

The rule in the *Rubens* case has been followed in numerous decisions since the time of its enunciation. (*Matter of Hart,* 160 Misc. 198; affd., 250 App. Div. 753; *Matter of James,* 167 Misc.

142; affd., 254 App. Div. 723; *Matter of McCullough*, 129 Misc. 113; *Matter of Fromet*, 135 id. 483.)

It is asserted by those seeking the probate of the will here that this rule and certain statutory provisions impose a mandatory duty upon the Surrogates' Courts to entertain jurisdiction generally in every case and particularly in the pending proceeding. Much reliance is placed by these parties upon the language of section 144 of the Surrogate's Court Act. It provides in part: " If it appears to the Surrogate that the will was duly executed * * * it must be admitted to probate as a will." In my opinion the text simply requires the surrogate in the ordinary case to inquire into the facts and circumstances in order to be satisfied as to the genuineness of the will and the validity of its execution. When properly construed in the light of experience, it imposes the duty upon the surrogate in every case of the will of a *resident* to admit the instrument to probate where the competency of the testator, his freedom from restraint and the validity of execution have been established. It imposes a similar duty upon the surrogate to admit, upon proper proof, the will of a *non-resident* where jurisdiction is initially entertained. When examined in the light of the history of probate proceedings in this State, its provisions do not admit of an interpretation which compels the Surrogate's Court to entertain jurisdiction in every case where the will of a non-resident is offered for judicial action in an original and independent probate proceeding. For example, it has been the practice of this court to refuse to entertain jurisdiction in original probate where the will has been duly admitted to probate or established in another State or country. If the rule were otherwise, any person interested in the instrument previously admitted or established might relitigate its validity anew in this State. (*Matter of Cornell*, 267 N. Y. 456, at p. 463; *Matter of Connell*, 221 id. 190; *Matter of Curtiss*, 140 Misc. 185, 186.)

Moreover, cases occur not infrequently where a proceeding has been begun in a State other than New York, and particularly in the State of domicile of the decedent, for the probate of the alleged will. In such cases, as a matter of comity to the State of domicile, the entertainment of jurisdiction is declined in the exercise of discretion. I so held in my decisions in *Matter of Leonori* (130 Misc. 499) and in *Matter of Wolf* (144 id. 256).

In *Matter of Feeney* (158 Misc. 246) the facts were much similar to those in the present proceeding. In that case the decedent died a resident of the State of New Jersey. A dispute as to domicile arose in this court. The proofs developed the same bitter hostility between the spouse of the decedent and the blood relatives. Surrogate DELEHANTY, in the closing paragraph of his decision, said: " Full and complete jurisdiction can and will be exercised in the

State of New Jersey. Since this deceased is adjudged to be a non-resident of this State, the court in the exercise of its discretion declines to entertain jurisdiction and dismisses the petition."

In respect of the use of the word " must " in section 144 of the Surrogate's Court Act, it should be stated that in other forms or proceedings where the provisions of the Surrogate's Court Act are apparently mandatory in form or contain the word "must " in a direction to the judicial officer, the Court of Appeals has held that discretion was conferred rather than imperative duty imposed. (*Matter of Fitch*, 160 N. Y. 87; *Matter of Connell*, 221 id. 190; *Lapiedra* v. *American Surety Co.*, 247 id. 25; *Matter of Cornell*, 149 Misc. 553; affd., 267 N. Y. 456.)

In *Matter of Fitch* (160 N. Y. 87), Chief Judge PARKER pointed out that under the predecessor statute of present section 45 of the Surrogate's Court Act and in respect of subdivision 3 thereof, relating to jurisdiction over the wills of non-residents: " the Surrogate's Court seldom takes jurisdiction, and *never does it do so* unless *the best interests of the estate* and that of the parties interested therein *will be subserved by its exercise of the jurisdiction* which the statute plainly attempts to confer, and *when it does* it follows the rule laid down by this court in *Parsons* v. *Lyman* (20 N. Y. 103) as modified by statute." (Italics mine.) It will be noted that the facts in the pending proceeding come squarely within the rule of discretion thus laid down since jurisdiction to entertain the application here is based upon the similar provisions of subdivision 3 of section 45 of the Surrogate's Court Act.

In *Matter of Thurber* (162 N. Y. 244) the Court of Appeals was again presented with a controversy as to whether the statutory provisions relating to the power and authority of this court were mandatory or permissive. The terms of former section 812 of the Code of Civil Procedure were involved. They related to the right of release of the surety upon the bond of a fiduciary. The court pointed out that not only power was involved but also the question of the exercise of discretion. The appellant contended that the provisions of the Code section were mandatory since the word " must " excluded discretion. The court answered this assertion with a statement that the word "must " is occasionally used in the statutes without an imperative meaning. " When all the provisions of the section are read together, we think the court has a discretion to exercise depending on the facts of the case, and is not commanded to make a decree regardless of those facts. In other words, we construe the expression ' a decree must be made ' under the circumstance to mean ' a decree may be made,' and hence the Special Term had a discretion to exercise in the first instance and the Appellate Division by way of review."

*Matter of Thurber*, just considered, was followed by the court in *Lapiedra* v. *American Surety Co.* (247 N. Y. 25), where the issue before the court involved a further interpretation of the language of the same section of the Code. It was there stated: " This court has held (*Matter of Thurber*, 162 N. Y. 244) that the expression ' a decree *must be made* ' does not deprive the Surrogate of discretion but means merely that decree *may be* made." (Italics as in original opinion.)

Again, in *Matter of Cornell* (267 N. Y. 456, affg. 149 Misc. 553), the permissive interpretation of a statute was recognized and mandatory duty held not existent. There my colleague, Surrogate DELEHANTY, refused as a matter of discretion to hear and determine a dispute as to whether the decedent was a resident of California or of Missouri. The decedent was concededly a non-resident of the State of New York. Ancillary letters testamentary had been issued in this court under the decree originally admitting the will to probate in California. The public administrator of a local subdivision of Missouri attempted to vacate the grant of ancillary letters which directly put in issue the domicile of the decedent. Upon appeal the Appellate Division (242 App. Div. 562) reversed the surrogate and held that the provisions of sections 159 and 160 of the Surrogate's Court Act relating to the grant of ancillary letters imposed a mandatory duty upon the surrogate. Section 159 provides that the court " must " issue ancillary letters testamentary upon the presentation of certain proofs of foreign probate or establishment of the will. Section 160 similarly requires that the court " must " issue ancillary letters of administration upon the submission of proof of the issuance of foreign letters of administration. The Court of Appeals reversed the Appellate Division and affirmed the surrogate. (267 N. Y. 456.) It held that the sections of the Surrogate's Court Act quoted above were not mandatory, as found by the Appellate Division, but that the surrogate possessed discretion to decline to try a controversy in which neither the State of New York under its taxing power nor any citizen of our State was concerned.

In the exercise or non-exercise of discretion to entertain a probate proceeding of the will of a non-resident, the surrogates are guided by the circumstances of each case, by the relative rights of the parties in interest, the presence or absence of residence in our State of legatees named in the testamentary instrument and other distinctive considerations. Sometimes it is developed that the executor, a New York resident, is precluded from qualifying under the law of the State of domicile. Jurisdiction is entertained as a matter of discretion. In certain cases most, if not all, of the legatees are residents of this State, and jurisdiction is entertained for the pro-

tection of our citizens and distribution decreed in order to avoid a double administration. In other cases the will itself indicates an intention on the part of the testator to have the administration conducted in New York or under its laws. (*Matter of James*, 167 Misc. 142; affd., 254 App. Div. 723.) In some cases the will has been drafted and executed in this State. In certain estates all or a great majority of the property may be located here. Sometimes the formalities of the execution of the will may be less onerous in our State than in the State of domicile of the testator. In other cases, such as here, the decedent may be utterly incompetent under the law of his domicile to make any valid testamentary instrument. The distinction is obvious between the requirements of the execution of the will as against a complete domiciliary prohibition against the devolution of personal property except under its laws of intestacy. No one of these circumstances standing alone may be controlling, but the picture presented must be viewed in its entirety.

A final consideration, likewise existent here, may also arise under the well-established rule of the courts of our State when the surrogate may refuse to entertain jurisdiction of litigation where none of the parties is a resident of New York. (*Matter of Meyer*, 244 N. Y. 598, affg. 125 Misc. 361; *Wedemann* v. *United States Trust Co.*, 258 N. Y. 315; *Matter of Cornell*, 267 id. 456.)

Except for the sister noted below, every person mentioned in the alleged will offered here is a non-resident of this State. The next of kin and distributees are to be determined under the law of the domicile and not by the law of our State. The sole distributee under the law of New Jersey is the widow. A sister of the decedent is the only close relative who happens to be a resident of our State. She is not, however, one of the legal next of kin. She is named in the alleged testamentary instrument merely in a precatory manner. No absolute legacy is given to her. The witnesses to the alleged instrument both reside in New Jersey. Under these circumstances there is no reason why the courts of our State should be required to devote their time to the trial and determination of controversies between non-residents.

With this review of the authorities and with the unquestionable existence of discretion in the surrogate a dismissal of the proceeding must follow. The special circumstances presented, and particularly the infancy of the widow of the decedent, the rights accorded to her under the laws of her own State, the utter incompetency of the decedent to make a will under that law, the absence of any interest in the estate by a resident of New York and comity, all justify this conclusion.

Submit order on notice accordingly.